UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN S. SMITH,

    Plaintiff,

vs.                                      Case No.

LIFE INSURANCE COMPANY             HON.
OF NORTH AMERICA,

    Defendant.

---

Troy W. Haney (P48614)
HANEY LAW OFFICE, P.C.
Attorney for Plaintiff
330 East Fulton Street
Grand Rapids, MI 49503
Telephone:  616-235-2300
Facsimile:  616-459-0137
Email:  thaney@troyhaneylaw.com

---

## COMPLAINT

Plaintiff, Jonathan S. Smith, by his attorney, Troy W. Haney of Haney Law Office, P.C., and for his complaint against Defendant, Life Insurance Company of North America, states as follows:

### Nature of Action and Jurisdiction

1. This is a civil complaint brought by Plaintiff, Jonathan S. Smith ("Plaintiff"), under the Employee Retirement Income Security Act ("ERISA"), §502, 29 U.S.C. 1132, regarding breach of the terms of an employee benefit plan and breach of fiduciary duties, for the purpose of compelling Defendant to provide certain disability insurance benefits in amounts and at the coverage levels promised and for an accounting, recovery of damages,

costs, and attorney fees incurred as a consequence of Defendant's breaches of its obligations and duties under ERISA as detailed herein.

2. This Court has subject jurisdiction over Plaintiff's claims pursuant to ERISA §502(e) and (f), 29 U.S.C. 1132(e) and (f) and 28 U.S.C. 1331.

3. Venue properly lies in this District pursuant to ERISA §502(e)(2), 29 U.S.C. 1132(e)(2).

## Parties and General Allegations

4. At all relevant times, Plaintiff was a participant, as defined by ERISA §3(7), 29 U.S.C. 1002(7), in the TownSquare Media Group Health and Welfare Benefit Plan ("the Plan") provided by TownSquare Media, to its eligible employees, including Plaintiff, administered and funded by an insurance policy issued by Defendant, Life Insurance Company of North America ("LINA") to TownSquare Media, for group disability benefits as group policy no. LK-962776.

5. At all relevant times, the Plan was an employee welfare benefit plan within the meaning of ERISA §3(1), 29 U.S.C. 1002(1), sponsored by TownSquare Media and funded by the above-referenced insurance policy issued by LINA. As such, LINA is the proper party to defend this matter and the sole entity responsible for the payment of claimed benefits set forth below.

6. At all relevant times, Defendant was the fiduciary of the Plan within the meaning of ERISA §3(21), 29 U.S.C. 1002(21), in that Defendant acted as a claims administrator and as a fiduciary for the Plan and exercised authority and control over the payment of long term disability "LTD" benefits, which are assets of the Plan. Pursuant to 29 C.F.R. §2560.503-1(h)(1), Defendant, therefore, functioned as an administrator for claims procedure purposes.

**Facts**

7. At all relevant times the Plaintiff was employed full-time by TownSquare Media as an Account Executive.

8. The Plaintiff's diagnosed medical conditions are as follows:

    - Severe right-sided Heart Failure with preserved Ejection Fraction ("HFpEF");
    - Polymorphic Ventricular Tachycardia;
    - History of Paroxysmal Atrial Fibrillation;
    - Heart Palpitations;
    - Premature Ventricular Contractions;
    - Frequent Ventricular Ectopy;
    - Severe Cardiopulmonary Deconditioning;
    - Gastrointestinal Stromal Tumor ("GIST");
    - Morbid Obesity;
    - Alveolar Hypoventilation;
    - Shortness of breath on exertion;
    - Diastolic Dysfunction;
    - Chronic low back pain;
    - Arthritis of the knees, causing joint pain;
    - Hypothyroidism;
    - Lymphedema;
    - Obstructive Sleep Apnea;
    - Nocturnal Dyspnea.

9. Due to the above-described medical conditions and the associated symptomatology, the Plaintiff is restricted from lifting or carrying more than ten (10) pounds, and can only "occasionally" (0-2.5 hours/day) sit, stand, walk, reach, manipulate, grasp, stoop, kneel, crouch, or crawl. The Plaintiff also has a family history of Sudden Cardiac Death ("SCD"), which was the cause of death for both the Plaintiff's father and son. Based on Plaintiff's medical conditions and family history, he wears a "LifeVest", which is a personal defibrillator worn by an individual that monitors the person's heart continuously, and if

that person goes into a life-threatening arrhythmia, the LifeVest delivers a shock treatment to restore the heart to normal rhythm.

10. As a result of the Plaintiff's various medical conditions and symptomatology, the Plaintiff's last day of work was on June 8, 2018.

11. In accordance with his employment contract, the Plaintiff applied for long term disability benefits through LINA, which were eventually approved with an effective start date of September 9, 2018.

12. The definition of "Disability/Disabled" within the Plan is as follows:

> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
>
> > 1) unable to perform the material duties of her or her Regular Occupation; and
> >
> > 2) unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
>
> > 1) unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
> >
> > 2) unable to earn 60% or more of her or her Indexed Earnings.

13. On January 28, 2019, LINA had an internal review conducted by Dr. Paul Seiferth, a physician specializing in Family and Occupational Medicine, who stated in part,

> It is my professional opinion with a reasonable degree of medical certainty that, there are limitations of function requiring medically necessary activity restrictions ongoing. Clinical information indicates right sided heart failure (HFpEF) with significant fluid retention producing bilateral lower extremity edema superimposed on lymphedema. Also present is morbid obesity, shortness of breath, and atrial fibrillation.

14. On September 25, 2019, the Plaintiff underwent gastric bypass surgery to address his morbid obesity. During the procedure, a gastrointestinal tumor was also found and surgically removed.

15. On March 9, 2020, the Plaintiff was seen by his cardiologist, Dr. Thomas Vanhecke, who notated in part the following,

> At the present time, he reports having significant stomach issues and issues with eating, and not able to control reflux… He reports still having leg swelling, and has to elevate his legs. * * *
>
> **Constitutional:** feeling poorly and feeling tired.
> **Cardiovascular:** palpitations and lower extremity edema, but no intermittent leg claudication.
> **Respiratory:** shortness of breath, orthopnea, shortness of breath during exertion and [paroxysmal nocturnal dyspnea] but no cough. * * *
>
> **Active Problems**
> • (HFpEF) heart failure with preserved ejection fraction (I50.30)
> • Atrial fibrillation (I48.91)
> • Gastrointestinal stromal tumor (GIST) of stomach (C49.A2)
> • Lymphedema. (I89.0)
> • Morbid obesity with BMI of 60.0-69,9, adult (E66.01, Z68.44)
> • Morbid obesity, unspecified obesity type (E66.01)
> • Multiple vitamin deficiency (E56.9)
> • Palpitations (R00.2)
> • PVC (premature ventricular contraction) (I49.3)
> • S/P laparoscopic sleeve gastrectomy (Z98.84)
> • SOB (shortness of breath) on exertion (R06.02)

16. On March 23, 2020, the Social Security Administration ("SSA") issued a favorable decision and granted the Plaintiff's claim for Social Security Disability Insurance ("SSDI") benefits, with an effective date of December 1, 2018.

17. On April 3, 2020, LINA issued a letter to the Plaintiff notifying him that it would be reviewing his claim for qualification for continued disability benefits under the "Any Occupation" definition of disability, which would be the relevant definition of disability starting on August 9, 2020.

18. On June 26, 2020, the Plaintiff attended an "Independent" Medical Examination ("IME") with an Internal Medicine physician, Dr. Herbert Malinoff. In the opinion of Dr. Malinoff, although he agreed that the Plaintiff had a number of ongoing medical diagnoses, he did not believe that there were any restrictions or limitations from the Plaintiff's ability to return to work in his former position. It should also be noted that Dr. Malinoff declined to

5

complete a Physical Ability Assessment form, admitting that functional capability was not tested as part of his evaluation.

19. On July 1, 2020, the Plaintiff attended an appointment at the Ascension Medical Group Genesys Heart Institute, where he was seen by Rheannon McDonald, PA. As part of that visit, it was noted that Plaintiff had agreed "*to wear a LifeVest considering his risk of [Sudden Cardiac Arrest] is moderate to high given his [family history] of [Sudden Cardiac Death] and documented [polymorphic ventricular tachycardia] and more recently frequent symptomatic [premature ventricular contraction] with lightheadedness and palpitations.*"

20. On July 23, 2020, Dr. Vanhecke completed a Physical Ability Assessment form, which stated in part,

> [Your assessment of our customer's physical abilities is based on]: Examination; Functional Assessment; and a diagnosis that implies an increased risk of harm requiring physician imposed work activity restrictions.
>
> [Throughout an 8 hour workday, to the extent that positional changes are necessary, with rest breaks and meal breaks at appropriate intervals, he or she can tolerate the following activities for the specified durations]:
>
> Occasionally: 0 – 2.5 Hrs./Day, 0 – 1/3 of the Day: Sitting; Standing; Walking; Reaching (overhead, desk level, below waist); Fine Manipulation; Simple Grasp; Firm Grasp; Lifting (negligible amount – 10 lbs.); Carrying (negligible amount – 10 lbs.).
>
> 0 Hours: Lifting over 10 lbs.; Carrying over 10 lbs.; Climbing stairs; Balancing; Kneeling; Crouching; and Crawling.

21. On August 28, 2020, Dr. Malinoff issued an addendum to his IME report based on the new information that the Plaintiff was now wearing a LifeVest. Although Dr. Malinoff is not a cardiologist, he stated that in his opinion the LifeVest was not necessary, and that this new development did not alter his prior opinion.

22. On September 3, 2020, the Defendant issued a letter to the Plaintiff notifying him that it was terminating his LTD benefits based on the following decision:

6

> We have completed our review and determined that you no longer remain disabled as defined by your policy. * * *
>
> Dr. Malinoff concluded that there is no evidence of congestive heart failure or any type of cardiac decompensation. Dr. Malinoff opined that you can return to work without any restrictions. * * *
>
> The medical information provided for review continues to illustrate that you are able to perform the duties of your regular occupation as a Sales Representative, Radio and Television Time, classified as a light physical demand level per the Dictionary of Occupational Titles. Additionally, you are able to perform the sedentary occupations noted above.
>
> At this time, you no longer meet the definition of Disability stated above and your claim has been closed. Payments have been made through September 8, 2020 and no further benefits are due.

23. On December 3, 2020, without the assistance of counsel, the Plaintiff appealed the Defendant's decision to terminate his LTD benefits, and stated in full:

> I am writing to contest/appeal your decision that I am no longer disabled. I am having the same issues as I have had for over 2 years. I am currently wearing a LifeVest 24 hours a day in case of sudden cardiac arrest. My father died at the age of 51 from Sudden Cardiac Death and my 17 yr. old son also died of sudden cardiac arrest in 2011.
>
> I have enclosed 3 letters from my medical team (who have been my physician's for over 2 years). They state I am not able to go back to work. Please reconsider the opinion of Dr. Malinoff. His short meeting with me was pleasant but guided and he appeared to have little knowledge of cardiac issues. Whereas I trust my Cardiac Team from Ascension Medical Group; Genesys Heart Institute; Dr. Thomas Vanhecke, MD, FACC (Cardiologist); Dr Eric Good, DO (Electrophysiologist); Rheannon McDonald, PA-C; Dr Karl J. Ilg, MD (Electrophysiologist).

24. As part of the Plaintiff's December 3, 2020 appeal, he also provided a medical record from Samantha Myers, PA, signed on October 19, 2020, and which stated in part,

> To Whom It May Concern,
>
> Mr. Smith is a pleasant 55 year old male known to Dr. Vanhecke with a cardiac history significant for:
>
> 1. Paroxysmal atrial fibrillation
>     - With history of multiple cardioversions
>
> 2. Frequent Premature Ventricular Contracture
>     - 5% Burden
>     - Family history of sudden death
>
> 3. Heart Failure with Preserved Ejection Fracture with refractory right sided heart failure
>     - left ventricular ejection fraction 55-60%
>
> 4. Hypertension

7

> 5. Obstructive Sleep Apnea
>
> 6. Lymphedema
>    - chronic requiring use of lymphedema pumps two hours per day
>
> 7. Morbid obesity * * *
>
> Mr. Smith has known heart failure with functional class 3/4 symptoms and symptomatic palpitations with activity. He is currently wearing a Life Vest and is being evaluated and managed by the Electrophysiology Team. * * *
>
> Mr. Smith has frequent symptomatic pleomorphic [premature ventricular contractions] and a structurally normal heart. He has family history of sudden cardiac death and he is continue to wear Life Vest and awaiting diagnostic electrophysiological study for re-stratification and possible catheter ablation.

25. On January 26, 2021, the Defendant advised that it was maintaining the decision to terminate the Plaintiff's LTD benefits. The decision stated in part,

> After completing our review of your claim, we are upholding the prior decision and will not pay any additional benefits. * * *
>
> According to medical records reviewed by a Board Certified Cardiologist, the evidence did support the presence of ongoing functional impairment beyond September 9, 2020. * * *
>
> According to medical records reviewed by a Board Certified provide [sic] in Occupational Medicine, the evidence did support the presence of ongoing functional impairment beyond September 9, 2020. * * *
>
> During the appeal process, the claim was referred again to our vocational department for another TSA. This analysis took into consideration your supported restrictions and/or limitations (as stated above), education history, and employment history to determine if any occupations exist that you would be able to perform based on all of the current information in the file. The analysis confirmed that you would be able to perform the following occupations:
>
> • DOT Code 219.137-010 Field Cashier, $37,260
> • DOT Code 229.387-010 Material Lister, $35,350
>
> In summary, we have determined that you are able to perform the above identified occupations and earn at least 60% of your Indexed Earnings. The occupations above are compatible with your work capacity and satisfy the earnings requirement according to the employer's policy. According to the rehabilitation specialist, the identified occupations are considered entry-level and do not generally require prior training or experience to be considered qualified… Because these occupations have been identified through this process, there is no evidence at this time to warrant an alteration to the decision to deny your claim. We are not disputing that you may have restrictions and/or limitations, but an explanation of your functionality and how your functional capacity prevents you from performing any occupation from September 9, 2020 and forward is not medically supported.

26. The Defendant based its decision to maintain the termination of LTD benefits in part on a paper-file review completed on January 4, 2021 by a Cardiologist, Dr. Jane Kauffman. It

should be noted that Dr. Kauffman did not speak with or examine the Plaintiff at any time, nor did she speak with any of the Plaintiff's attending physicians. Upon completion of her review, Dr. Kauffman recommended only minimal limitations on sitting and standing, but otherwise considered the Plaintiff to have unlimited capacity for all other activities.

27. The Defendant also based its decision to maintain the termination of LTD benefits in part on a paper-file review completed on January 6, 2021 by Dr. Bryant Martin, who specializes in Family, Occupational, and Aerospace Medicine. It should be noted that Dr. Martin did not speak with or examine the Plaintiff at any time, nor did he speak with any of the Plaintiff's attending physicians. Upon completion of his review, Dr. Martin followed suit with Dr. Kauffman and recommended only minimal limitations on sitting and standing, but otherwise considered the Plaintiff to have unlimited capacity for all other activities.

28. The Defendant also based its decision to maintain the termination of LTD benefits in part on a Transferable Skills Analysis completed on January 11, 2021 by Randy Norris, a Rehabilitation Specialist. The report concluded that there were potential positions available that the Plaintiff was capable of performing, however, it should also be noted that the analysis was based solely on the minimal restrictions and limitations provided by Dr. Kauffman and Dr. Martin, and the analysis did not include any consideration of the medical records or restrictions from the Plaintiff's attending physicians. Also, Mr. Norris had not met with, spoken to, nor conducted a Functional Capacity Evaluation of the Plaintiff.

29. In the January 26, 2021 final denial letter, the Defendant also informed the Plaintiff that he had "*exhausted all administrative levels of appeal*" and that the Plaintiff had "*the right to bring a legal action for benefits under the Employee Retirement Income Security Act of 1974 (ERISA) section 502(a)*".

30. As a result of the aforementioned wrongful actions, Plaintiff's group waiver of life premium may have also been wrongfully denied by operation of the decision to terminate his long term disability benefits.

## COUNT I
### Claim for Benefits Pursuant to ERISA §502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B) against Defendant

31. The Plaintiff incorporates paragraphs 1 through 30 above as if fully restated herein.

32. ERISA §502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due to him under the terms of a plan, to enforce his rights under the terms of a plan and/or to clarify his rights to future benefits under the terms of a plan.

33. The failure to pay full disability benefits as described above are in direct violation of the terms of the Plan.

34. The Plan has failed to pay disability benefits to the Plaintiff despite the recommendations of his physicians and disabling medical conditions.

35. The failure and refusal of the Plan to pay the benefits owed the Plaintiff under the Plan is a breach of the terms and provisions of the Plan.

36. In addition, the Plan has failed to properly and thoroughly investigate the Plaintiff's claim in the manner required by ERISA's fiduciary and claims procedure requirements.

37. The actions of the Plan have caused damage to the Plaintiff in the form of the denial of long term disability benefits.

38. In addition, because the Plan denied the payment of the Plaintiff's long term disability benefits, the Plaintiff became ineligible for other benefits provided through his employment such as pension, medical benefits, and the waiver of group life insurance premiums.

**PRAYER FOR RELIEF**

      Plaintiff requests that this Honorable Court grant the following relief:

A.    A declaratory judgment pursuant to ERISA §502(a)(1)(B), 29 U.S.C. 1132 (a)(1)(B) and 28 U.S.C. 2201, declaring that the Plaintiff is entitled to the group employee benefits in the proper amounts as set forth in the Plan in effect at the time benefits became payable and that the Defendant has violated the Plan and its fiduciary duties by failing to pay these benefits and honor the group waiver of life premium.

B.    A full and accurate accounting by the Defendant of all computations for the Plaintiff's employee benefits, in sufficient detail so that the Plaintiff may ascertain that his benefits are being paid in the proper amount.

C.    An Order compelling the Defendant to pay the Plaintiff forthwith the full amount of employee benefits due to him and to continue such payments for the period set forth in the Plan, including interest on all unpaid benefits.

D.    An Order awarding reasonable attorney fees and costs pursuant to ERISA §502(g)(1), 29 U.S.C. 1132 (g)(1).

E.    Such other relief as may be just and appropriate.

Dated:  August 5, 2021

                                        */s/ Troy W. Haney*
                                        Troy W. Haney (P48614)
                                        HANEY LAW OFFICE, P.C.
                                        Attorney for Plaintiff
                                        330 East Fulton Street
                                        Grand Rapids, MI 49503